Richardson, J.
delivered the opinion of the Court.
Gan the overseer of a plantation, in virtue of the authority of his office, lawfully trade with the slaves placed under his charge ? is the question for the Court.
That the overseer may, at least in the absence of the master, give the written permit required by the Act of 1817, so as to justify a stranger in trading with the slave, may be conceded as lawful.
But can he himself so trade with the slave, without any written permit from the owner 1
If we are to judge from the terms of the Act, to wit, “ any *268 one trading with a slave, not having a permit so to deal” or trade, &c. the overseer is clearly liable to the .penalty of the law, he having no such permit from the only person, the owner, that could give it to him. But the proper legal argument arises from the analogy between an overseer and other agents.
The commission of an agent is, not to act for himself, nor to take unlawful gain. His office is to act between his principal and other men. For suppose any clerk in a merchant’s store may give credit for goods sold, to a third person, but he cannot assume the like credit to himself. The same may be said of factors and salesmen in general. The permit to a slave to sell an articLe, is a license to sell that which is, legally speaking, the master’s property. And the overseer, like the factor, cannot sell to himself.
Enlarged policy and prudence, not to say the necessity of avoiding so great a temptation to abuse the trust, forbids it to be perverted to the mere personal and selfish purposes of the trustee. This limitation to the powers of agents applies to the office of the most general aud confidential agents — but more especially to the confined and mere ministerial agency of a manager of slaves. There is no reason, therefore, that the overseer of a plantation shall be placed out of the reach of this important distinction, in the authority of an agent, when he acts for himself, and when he acts between his principal and a stranger — -the latter being the object and the former the perversion of such a commission.
The Act of 1817, and all such Acts, constitute a great part of our slave police — the prohibition is to restrain the extensive vice of receiving stolen goods, under the disguise of buying them from negroes. Accordingly, the judicial construction has ever been, to bring within' its provisions every instance of illicit trading with slaves, in order to advance the true object, by suppressing the besetting mischief of this frequent vice.
The Act prohibits all manner of trading with slaves, except under a written permit of the specified article. This utter prohibition is the broad ground of such decisions.
The instance before the Court is one among the most obnoxious to the spirit of such laws. It was a fottl abuse of the confidence reposed in the overseer, and is very like the felonious embezzling part of a package by a carrier. Who would call the act less than swindling 1
Thus the spirit of the Act, and of past adjudications — the safety of the master and the morals of his slaves, unite with the policy to hold such a delinquent overseer under the penalty of the Act.
Even were the defendant not plainly within the usual *269 rules for expounding the meaning of such Acts, yet I might with reason say, that for the character of overseers, for the safety of their employers, and for example’s sake, let the confidential key-keeper of the corn-house and the barn be punished when he proves so delinquent as to sell whiskey to his own flock; for their weekly corn let him be punished, if only in “odium spoliatoris.”
O’Neall, J. Evans, J. and Frost, J. concurred.